# Fehr *versus* The Schuylkill Navigation Co.

1. The act of incorporation of the Schuylkill Navigation Co. provides a mode which must be strictly pursued for the redress of all injuries, direct or remote, from constructing dams or other devices authorized by the act: a common-law action will not lie for such injuries.

2. The company have the right to increase the height of their dams when necessary for improving their navigation.

3. A common-law remedy will lie for the abuse of their privileges or for a neglect of their duties.

4. A dam of the company was so filled with material brought into it from above, as to impede its navigation; they put strips on the dam which raised the water, and, as plaintiff alleged, caused it to overflow his land. The injury being from the strips, the plaintiff's remedy was only under the charter.

5. Where the injury arises from an authorized act necessary to accomplish the purpose of the charter, a common-law action for the injury will not lie, unless it be clearly shown that the injury was superinduced by the gross negligence of the company. Whether such negligence would be a sufficiently proximate cause to ground an action, *Quœre?*

6. If the injury should arise directly from the company negligently permitting the material to accumulate in the dam, the plaintiff would have a cause of action.

7. The company could not raise the dam so as to injure the land from motives of economy, unless the expense of cleaning it were excessive and unreasonable, when they might raise the dam, paying damages under their charter for the injury. *Per* PEARSON, P. J.

8. Schuylkill Nav. Co. *v.* McDonough, 9 Casey 73, distinguished.

19 P. F. SMITH—11

[Fehr *v.* Schuylkill Navigation Co.]

May 18th 1871.  Before READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Error to the Court of Common Pleas of *Lebanon county:* Of May Term 1871, No. 35.

This was an action on the case commenced in Schuylkill county, December 28th 1864, by Morgan Fehr against The President, &c., of the Schuylkill Navigation Company.

The declaration contained three counts.

The first charged that the defendants, by a dam or causeway, did so obstruct and raise the water of the Schuylkill river as to overflow a tract of land of the plaintiff lying near the river as to injure the land and the crops growing on it.

The second charged, that the defendants had theretofore built a dam across the river, for the purpose of using the water for artificial navigation, and that they so negligently and carelessly kept the dam " as to cause the coal-dirt, earth, sand, stones and other debris and materials which from time to time were flooded, washed and carried down said river to lodge and stay in the river and clog up " its natural channel, and thus obstructed the natural flow of the water, that was greatly raised above the natural channel and original bed of the river, so that the water overflowed the plaintiff's land, soaked through its soil and destroyed the crops growing on it.

The third charged, that the defendants obstructed the flow of the water of the river and caused the bed of the river to fill up with earth and other debris, and suffered the earth, &c., to remain and continue in the channel and thereby caused the water of the river to rise above its natural banks and flood the plaintiff's land and spoil it, &c.

By the Act of March 8th 1815, incorporating the Schuylkill Navigation Company and its supplements, they were authorized to make a slack-water navigation in the Schuylkill river, and for that purpose to enlarge or deepen the river in any place and to set up any dam or " other device whatsoever, * * * so as to admit a safe and easy passage for loaded boats," &c.  If the owners of land injured by the works could not agree as to the amount of damage sustained or upon persons to assess it, the Court of Common Pleas of the proper county were to award a venire of disinterested men to ascertain and report to the court the damages sustained, with the right to either party to appeal to the court within thirty days after filing the report.

On the 12th of February 1869, the defendants removed the case into the Court of Common Pleas of Lebanon county, under the Act of April 14th 1834.  It was there tried before Pearson, P. J., November 14th 1870.

Plaintiff testified, that his land was near the canal, separated from it by a road under which is a culvert (with which the defendants had nothing to do), intended to drain his land into the

river near a dam built by the company for the purposes of their navigation; much coal-dirt, sand, stones, &c., were carried into the dam from higher up the river, so that during the years 1860, 1861, 1862, there was not left depth sufficient to float the boats. In order to increase the depth of the channel so as to float the boats, the company put strips called "splash-boards," from 6 to 10 inches high on the breast of the dam, which caused the water to flow back through the culvert on to the plaintiff's land and did him much damage; when there is a rise in the river the strips are taken off. The witness said, "The back flow of the water occasioned by putting on the strips is what I complain of as injuring my property."

He called a number of witnesses who testified to the same effect. He and his witnesses testified also that the dam was cleaned regularly; that the filling would generally occur after high freshets, and they cleaned it as soon as they could afterwards.

The defendants gave evidence that the plaintiff's land was overflowed only in high freshets; that the wetness of his land arose from springs on it, and that the water would have flowed off if the culvert under the road had been kept open. They gave evidence that they cleaned the dam whenever it was necessary; they kept five dredging-machines for the purpose, and had from twenty to fifty men employed from early in the spring until late in the fall; the dirt, which came from mines above the head of navigation, had much increased of latter years; they had every year to increase the labor on the canal to keep it in order; the labor was more than double what it was in 1850; the machines were usually worked in the spring, but were ready at all times to use when necessary.

Points of the respective parties with their answers:—

Plaintiff's points:

2. It was the duty of the Schuylkill Navigation Company to keep their dam No. 11 clear for the purposes of a canal and slack-water navigation, and this duty is implied in the grant of their franchise; and thereupon any damages resulting from such neglect cannot be regarded as legitimately resulting from the construction of the dam, but from neglect and improper management after the same had been constructed.

Answer: "It is the duty of the canal company to keep its dams and canal clear of dirt and debris as far as practicable, and if through neglect so to do the land of plaintiff was overflowed and injured, the company would be responsible therefor. But it must appear from the evidence that plaintiff's land was injured from that cause."

3. The defendant had no right to raise its dam No. 11 by means of strips or otherwise for the purpose of making the same navigable, if such raising became necessary in part or in whole by the neglect of the defendant to keep the said dam clear and free

from coal-dirt and debris, and therefore any damage occasioned thereby to plaintiff resulting from thus increasing the height of the water in the dam and causing the same to flow into, upon and through the land of plaintiff may be recovered in this suit.

Answer: "There is no complaint in the plaintiff's *narr.* of any injury done to the land described by reason of putting on the strips or splash-boards, and thereby increasing the height of the dam, and if so complained of this is not the proper remedy, but the party injured must proceed under the statute. The complaint urged is that in consequence of negligently suffering the dam to be filled up the defendant was obliged to raise the dam. But the injury from the debris is too remote, it is the *causa causata*, and furnishes no ground of action; the injury being the raising of the water by the splash-boards, or strips, not from the debris."

Defendant's points :—

1. If the defendant in consequence of increased mining operations carried on above their dam, found it impossible to keep it clear of sand, coal-dust and other debris, washed into it, by every rise of water, for navigable purposes, it had a right under its charter to put on strips on the breast of the dam, and the plaintiff, if injured thereby, has his remedy under the statute, and the common-law action resorted to, does not lie.

2. If the defendant, in consequence of increased mining operations carried on above its dam during the last fifteen years, found it inconvenient to keep the dam clear of coal-dust, sand and other debris, for navigable purposes continually washed into it by every rise of water, it had a right under its charter to put on the strips spoken of on the breast of the dam, and the remedy of the plaintiff if injured thereby, lies under the statute, and this form of action does not lie.

Answer: "These points may be answered together. If it was found '*impossible*' to keep the debris out of defendant's dam it had a right to increase the height thereof permanently or temporarily, so as to keep open the navigation at all times, as it was required to do by its charter. If merely '*inconvenient*' we would doubt it having such right, unless the Acts of Assembly leave it to the discretion of the corporation to change the form of the structure on account of '*inconvenience.*' As a general rule such accumulations, when possible to be removed, should be taken away rather than unnecessarily impede the navigation, or injure the riparian owners."

3. If the defendant, for reasons beyond its control during the last fifteen years, found that their dam was filling up with coal-dust, sand and other debris so as to impede the navigation, and it found as a matter of economy that it was more advantageous to the company to appropriate an additional water privilege under its charter rather than keep many men employed in cleaning it all the time, it had the right to do so, and the plaintiff must resort to his statutory

[Fehr *v.* Schuylkill Navigation Co.]

remedy to recover whatever damages he may have sustained, if any, and this form of action cannot be sustained; and under the evidence it does appear that this water privilege was appropriated.

Answer: "If by reason of matters entirely beyond the defendant's control the dam filled up with debris which could not be removed so quickly after the numerous freshets as to keep the navigation in order, we think that it had the right to raise its dam permanently or temporarily to meet the exigency. It could not from mere motives of economy, unless the increased expense was unreasonable. If great and excessive and unreasonable it might raise the dam, and thereby occupy an additional portion of the public domain, paying damages under its charter to all persons injured in their property or rights. We conceive that the statutory remedy is the only legal and proper one for an injury caused by an increase of the height of the dam, and that a common-law action will not lie in such cases where the right exercised comes within its charter power."

The court charged: "* * * [As we understand the evidence the defendant permanently raised its dam during the whole boating season by means of strips, and if any injury was done to plaintiff's land it was by reason of such increased structure, also from the increased height of the towing-path, neither of which acts are complained of in the *narr.* Probably they could not be with success, as for such increase in the height of the dam the plaintiff had ample remedy by proceeding under the Act of Assembly to have his damage assessed.] [For every increase in the height of the dam, or elevation of the water in the canal, a new petition for damages can be presented by the property-owner, viewers appointed, and damages awarded in proportion to the injury,] the public at the same time having the benefit of the navigation. But if a common-law action can be sustained, although the injury to the land may amount but to a few dollars, yet successive suits may be pursued until the defendant is obliged to reduce the dam, and thereby the public as well as the corporation be irreparably injured. Redress in damages is all that should be allowed in such cases, and that should be sought in the mode pointed out by the statute, so long as the company does not increase its dam beyond what is required, or use its privileges of obstructing the stream for purposes not contemplated or authorized by the law. [We do not see that the second and third counts of the *narr.* are sustained by any evidence in the case], and the first is sufficiently met by the authority conferred on the corporation by law. There is no complaint of the water being raised by the strips or splash-boards, and if complained of, it would be sufficiently met by showing, as has been done, that they were necessary at all times of low water, whether the dam had any debris in it or not; were kept on at all times, except in high water; and are that kind of permanent increase to the dam

[Fehr *v.* Schuylkill Navigation Co.]

that redress would have to be sought under the statute. [The increase by the strips cannot support this suit, because not complained of in the *narr.*, and in our opinion would not furnish a remedy by a common-law action had they been described. It is argued that the debris coming in superinduces the necessity for the strips on the dam, as it sometimes raises six inches or more in the channel. As it does not raise the water, which is done by the strips, the injury from the debris is too remote; *it is the cause of the cause.*] But all of the witnesses agree that the debris cannot be kept out, and the almost undisputed evidence is that it is removed as fast as it can be done by the company. This, with the answers to the points, will meet and cover every legal question in the case."

The verdict was for the defendants.

Having removed the record to the Supreme Court, the plaintiff assigned for error:

1–4. The parts of the charge in brackets.

5. Not submitting to the jury the question as to the cause of the injury.

6–8. The answers to the plaintiff's 2d and 3d and the defendant's 1st and 2d points.

No error was assigned to the defendant's 3d point.

*G. Weidman* and *G. E. Farquhar*, for plaintiff in error.—The remedies against the company, provided by the act of incorporation, are for injuries arising from the construction of the dam as a part of the navigable highway; and do not exclude the common-law remedies for injuries arising from an abuse of the privileges granted, or for the neglect of its duties: Schuylkill Nav. Co. *v.* McDonough, 9 Casey 73; Erie *v.* Schwingle, 10 Harris 388. A cause is not too remote to be looked to merely because it produces the damage by means of an intermediate agency; Pittsburg City *v.* Grier, 10 Harris 65; Siordet *v.* Hall, 4 Bingham 607.

*T. R. Bannan* (with whom was *J. Funck*) for defendant in error, referred to act of incorporation and Schuylkill Nav. Co. *v.* McDonough, *supra.*

The opinion of the court was delivered, July 3d 1872, by

WILLIAMS, J.—It is conceded that the company is not responsible in a common-law action, for direct or remote injuries arising from the construction of dams, locks and other devices which, by the act of incorporation and its supplements, it is authorized to make for the improvement of the navigation of the river. The charter provides a mode for the redress of all such injuries, which must be strictly pursued. Under the powers which it confers, the company has the right not only to construct dams, but to increase their height, when necessary, for the improvement of the naviga-

[Fehr *v.* Schuylkill Navigation Co.]

ble highway; and it may do this by means of "strips or splash-boards," as well as by more permanent structures.    The plaintiff then has no remedy in this form of action for the injury complained of, if it was occasioned by the lawful and proper exercise of the powers conferred on the company, in order to enable it "to make a complete slack-water navigation."    But the remedies against the company, provided by the act of incorporation, for injuries occasioned by the construction of its works, do not exclude the common-law remedies for injuries arising from the abuse of its privileges, or from the neglect of its duties; and if the injury in this case arose from the negligence of the company in suffering the pool of the dam to be filled with sand, coal-dirt, &c., as alleged in the second and third counts of the declaration, then the plaintiff may maintain this action and recover the damages he has sustained by such neglect of duty.    But, unhappily for the plaintiff, there is no evidence that the injury to his land was occasioned by the deposits of sand, coal-dirt, and other debris in the pool of the dam, as averred in the declaration.    On the contrary, the plaintiff, who was examined as a witness in his own behalf, said : " The back flow of the water, occasioned by putting on the strips, is what I complain of as injuring my property."    But under the powers conferred by its charter the company had the right, as already suggested, to put the strips on the dam for the purpose of increasing its height, if necessary, in order to render the river navigable; and if the plaintiff's land was injured by the back flow of the water occasioned thereby, his only remedy for the injury is the statutory one provided by the charter.    But it is strenuously contended that the company is liable in this form of action for the injury caused by the use of the strips or splash-boards, because there would have been no necessity or occasion to increase the height of the dam if the company had not been guilty of negligence in suffering the pool to be filled with the deposits of sand and coal-dirt.    The court below seems to have thought, that if the company was obliged to raise the dam in consequence of negligently suffering the pool to be filled with the debris brought down by the current, this action could not be maintained, because the negligence in suffering the pool to be filled up was too remote a cause of the injury to furnish any ground of action.    But without deciding this question, we are clearly of the opinion that there was no sufficient evidence of any such negligence on the part of the company as would justify the jury in finding that it had exceeded the powers, or abused the privileges conferred by its charter, in making use of the strips or splash-boards to increase the height of the dam in order to render the river navigable when the water is low—and if not, then it is clear that this action will not lie.    The evidence shows that sand, coal-dirt and other debris, in greater or less quantities, are brought down and deposited in

the pool when the river is high; and that the company employs five dredging-machines, worked by forty or fifty men, which are used every spring before the opening of navigation, and kept ready for use at all times when necessary, for the purpose of keeping the channel open and the pools clear of the obstructions arising from these deposits. In no single instance has it been shown that the company was guilty of negligence in not removing the obstructions as soon as it was reasonably practicable. The mere fact that deposits of dirt are continually made when the river is high, and that they have increased to such an extent within the last ten or fifteen years as to render an increase of the height of the dam necessary for the safe and convenient navigation of the river when the water is low, constitutes no such evidence of negligence in keeping the channel clear as would warrant the jury in finding that the company had abused its powers in making use of the strips or splash-boards for the purpose of raising the dam. Where the injury arises from an act which is authorized by the charter, if necessary to accomplish the purpose for which it was granted, no common-law action can be maintained for its redress, unless it is clearly shown that the necessity for such act was superinduced by the gross negligence of the company, even if such negligence can be regarded as a sufficiently proximate cause of the injury to furnish a ground of action. But if the evidence had shown that the plaintiff's land was injured by the defendant's negligence in suffering the sand and coal-dirt to accumulate in the pool and thereby to raise the water so as to overflow the land, as alleged in the declaration, then the plaintiff would have had the right to maintain the action, and so the court in effect charged the jury. In answering the plaintiff's second point the court said: "It is the duty of the canal company to keep its dams and canal clear of dirt and debris as far as practicable, and if through neglect so to do the land of the plaintiff was overflowed and injured the company would be responsible therefor. But it must appear from the evidence that plaintiff's land was injured from that cause." Though this answer is assigned as error, we see nothing in it of which the plaintiff has any reason to complain; and, as will be seen from what we have already said, we entirely concur with the learned judge in saying that if it was found impossible to keep the debris out of the defendant's dam, it had a right to increase permanently or temporarily the height thereof, so as to keep open the navigation at all times as it was required to do by its charter. But if by reason of matters entirely beyond the defendant's control, the dam filled up with debris which could not be removed so quickly after the numerous freshets as to keep the navigation in order, it had the right to raise its dam permanently or temporarily to meet the exigency. It could not from mere motives of economy, unless the increased

[Fehr v. Schuylkill Navigation Co.]

expense was unreasonable. If great and excessive and unreasonable, it might raise the dam, and thereby occupy an additional portion of the public domain, paying damages, under its charter, to all persons injured in their property or rights. We regard this instruction as a correct exposition of the rights and obligations of the company, under its charter, as applicable to the circumstances of this case. There is a wide difference between the present case and that of The Schuylkill Navigation Company v. McDonough, 9 Casey 73, upon which the plaintiff relies in support of this action. There the company had abandoned the use of the pool above the dam, and suffered it to be filled up with coal-dirt, &c., which raised the water of the Schuylkill river and of Mill creek so that it flowed into the cellar of the plaintiff below, rendering it wet and unwholesome. As the company had no right to convert the pool into a mere receptacle of the dirt washed down from the collieries above to the injury of the riparian inhabitants, it was clearly guilty of negligence in not removing it. But here there is no evidence that the injury complained of was caused by the defendant's negligence. The use of the pool was not abandoned by the company, nor was it suffered to be filled up with dirt so as to raise the water of the river and cause it to overflow the plaintiff's land. If his land was overflowed, it was the direct result of the defendant's act in raising the dam. As the company had the undoubted right to raise the dam for the purpose of rendering the river navigable, the remedy provided by the charter is the only legal and proper one for the injury occasioned thereby, and as the case was tried on this principle the judgment must be affirmed.

Judgment affirmed.